Good morning, your honors. May it please the court. Mark Lazo for the appellant in both matters. I did reserve 30 minutes of time in both matters, but I highly doubt I will need that. I would like to reserve five minutes for rebuttal in both. The only reason I did that is because there's two cases. And I'd like to begin with a 56242 case, which is the larger of the two cases stemming from the district court's order quashing my client's levy on the subject bank account. And this is important, your honors. After having ruled, it did not have jurisdiction over the administration of the trust or the bank account. This court directed counsel to the Peacock v. Thomas case, and absolutely rightly so. I suppose that's what appellate courts are for, is to point out glaringly on point case law that the parties, their counsel, and the lower court missed. And I think that is the Peacock case, in which the court held that federal courts do not possess ancillary jurisdiction in seeking to enforce a judgment against someone who was not initially liable on the judgment. When a judgment creditor seeks to impose liability on someone who is not the judgment debtor, there is no ancillary jurisdiction. Can I have you pause for a moment? Because I don't want you to be laboring under misapprehension regarding time. It is 15 minutes per side, so I want to clarify that. And if you want to reserve five minutes for rebuttal, that's fine. I'll try to remind you as well. Should suffice. Thank you, your honor. And in reaching this conclusion that federal courts do not possess ancillary jurisdiction in seeking to enforce a money judgment against a person who was not initially liable on that judgment, it relied on the US Supreme Court case of H.C. Hook Company, in which the court refused to authorize the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment against someone who was not liable for that judgment. And in relying on that authority, the Peacock case expressly stated in conclusion, we have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. That's exactly what we have here with the appellee Peggy Jackson, the trustee of the subject trust, the revocable trust. What does it make a difference that the action here was initiated against Hendon and not initiated naming the trust? It does not, for the very reason that we were, our entire position was that the trust was a fallacy. The trust was a fiction. That these monies were being thwarted through the coercive efforts of Peggy Jackson, who is the judgment debtor's sister and the trustee. Daniel Hendon had access to the bank account. He was a signatory to the bank account. His social security was linked to the bank account. And he took personal withdrawals of money from that bank account. Everything, every sign that we pointed to, spelled that this was not an actual spendthrift trust. That it was established for the purpose of thwarting my client, the judgment creditor. So it does not matter where the action was filed or that the action was filed against the judgment creditor. For that reason, your honors, and quite ironically, the district court stated that there are, quote unquote, factual issues about the spendthrift provision that may need to be decided by another court in a different jurisdiction. And the district court relied on the first merit bank case in which the appellate court upheld the lower court's determination that it refused to order the judgment creditor to assign payments from her trust to the judgment debtor because the trial court did not have jurisdiction over the trusts. Here, the district court expressly stated, we have no jurisdiction over the administration of this trust because it was formed in Arizona. It also stated, we have no jurisdiction over the safe deposit box in the subject bank account. However, we're gonna still issue an order quashing the levy. We're gonna issue, we're not gonna, we're going to freeze the assets and we're gonna order a release of the funds. That is inherently inconsistent. It can't say it has no jurisdiction over the disposition of the trust or the trust assets yet order this, make this order quashing the levy. If that determination is made, that the district court had no jurisdiction, everything else goes away. All of the other rulings go away. The order quashing the levy, the order refusing to freeze the assets of the trust, the order directing the release of the monies and everything else that the district court ordered must necessarily go away. Quite frankly, the only reason this case was filed here is because the judgment debtor, Mr. Daniel Hendon moved to Southern California from Arizona. Otherwise, nothing should have occurred here. And it was wrong of us not to point out the Peacock case to the magistrate prior to the district court's adoption of that recommendation and ruling. Even if there is jurisdiction, even if the district court did have jurisdiction, however, it erred in denying my client's application for a turnover order and asset freeze. And the important point here, your honors, is that we were at all times operating on the premise that this trust was a sham, that it was not a true spendthrift trust entitled to protection under the Code of Civil Procedure for the reasons I stated. It was linked to the judgment debtor's social security. It was opened by him and he had a signature card on file. He took personal withdrawals from this account. All of that evidence was in the face of the district court, yet they did not allow an evidentiary hearing for us to flesh those issues out. There is a tremendous difference between pursuing the beneficial interest of a trust beneficiary and pursuing the trust assets themselves, when the trust assets we contend are a farce, are a fiction. These were the assets of the judgment debtor, Daniel Hendon. The appellee has argued that, well, we should have sued the trust. We shouldn't have sued the judgment debtor if that was our position. And the problem with that argument is you can't sue a trust in California. There is binding California Supreme Court case law standing for the proposition that a trust is not a separate legal entity. It can neither sue nor can it be sued. The only relationship is that one of a fiduciary between the trustee and the trust assets themselves. And those cases were not cited about a trust not being able to pursue a lawsuit or be sued in a lawsuit. But I would like to direct your Honor's attention to the Moller v. Superior Court case, 16 Cal 4th, 1124 at 1132, and the Powers v. Ashton case, 45 Cal App 3rd, 783 at 787. And finally, the Merkrow Construction Engineers, Inc. versus Municipal Court case, 21 Cal 3rd, 724 at 729, all standing for that proposition. Could the trust have been sued elsewhere, another jurisdiction, Arizona or Florida? I think maybe it was... I don't recall where it was established. Maybe Arizona. I believe it was Arizona, Your Honor, but the trustee, Peggy Jackson, I believe resides in Florida. I don't have the answer to that question as to whether a trust can be sued in Arizona under Arizona law. I guess, does it make any difference? Maybe it's not consequential. It's inconsequential in our mind for the reason that we were, at all times, pursuing the assets. If this was a true trust that had spendthrift provisions attached to it by which the judgment debtor could receive income to live off, that is the point of a spendthrift trust. You receive income so you can live, and that income is supposed to be protected from judgment creditors. If that was the case, then perhaps there would be a distinction. But here we have a case where all signs pointed to this bank account, the trust corpus, if you will, belonging to the judgment debtor and exclusively the judgment debtor. Can you, counsel, quickly address the Rule 45 sanctions issue? Yes. Because you didn't raise the argument below that you're raising here as to facial validity of the subpoena. And that turns on the 100-mile rule, Your Honor, and I believe this is Sixth Circuit law. Perhaps Your Honor can correct me if I'm wrong, but we did not find case law in the Ninth Circuit standing for the proposition that if the documents in response to such a subpoena can be produced by mail, regular mail or by email, there is no burden and there is no violation of that 100-mile requirement. Well, but given that it wasn't argued to the district court, you didn't give the district court an opportunity to pass on it. Is that argument now waived or forfeited? It has not been waived, Your Honor, for two reasons. One is that it is a pure question of law, and two, we had good reason to attempt to change the law in making that argument. We did raise that argument in our reply papers. We did not raise it in the underlying case because there was a ruling and recommendation that was made and then adoption of that ruling and recommendation. We did not have the opportunity to do so. We could have made an objection as we did in the other case, but we did not do that. However, and the point really here is the sanctions. Did we do anything that was sanctionable? Did we act in bad faith? We never required Ms. Jackson to fly out here for a deposition. We never required her to hand produce the documents. We didn't even require her to hire a process server or some company to produce a document. She could have emailed the documents. She could have mailed the documents. In this day and age, she could have set up a Dropbox link to give us access to the documents or some SharePoint file. None of this was oppressive. All we wanted- Were there any objections made clear to counsel? There is a big gap in a meet and confer process between counsel and I. We did not have the opportunity to do so. And in fact, they were admonished by the district court for their refusal to participate in a meet and confer. What we didn't do, Your Honor, is we didn't say these documents have to be hand delivered. We didn't say Peggy Jackson has to appear. We just said, we want the documents. I had several attempts, phone calls that were made and emails that were sent that were not responded to. And that is admitted by them. It's one thing to pick up the phone and say, I think you're wrong. There's nothing more to discuss. It's another thing not to ever call at all. We did not receive a phone call. We absolutely would have made that option available. Why do we want to burden someone with an archaic method of delivering documents? Email us the documents, set up a Dropbox link. It would have sufficed. We're down to three and a half minutes. Yes, I just- I really wanted to save some time. I would. Just one more brief point, Your Honor. To stress the inherent contradiction in the district court's ruling, how can it effectively rule the trust was a proper spendthrift trust and thus entitled to exemption when it expressly stated it did not have jurisdiction over the administration of the trust? How can it make that ruling inherently and not be inconsistent? And I will reserve the rest. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Ronald E. Warnicke. I'm here today representing Peggy Jackson, trustee of the Hendon Trust, a trust formed in Arizona with all of the documentation produced to the court below. The district court found that, held that it was a validly subsisting Arizona trust, which, by the way, can be sued in Arizona, in which, by the way, they even filed a motion in the bankruptcy court seeking to name the trust. They didn't pursue the motion. The motion was to amend the lawsuit against Nell Hendon and dozens of others. They lost that. It was dismissed with prejudice. And that, I believe, Your Honor, is important. Now, the second thing is I'm not here representing Peggy Jackson individually, nor am I here this morning representing Peggy Jackson as personal representative of the Nell Hendon estate. Yet, the subpoena under Rule 45 served on me 10 days after it was issued, was sent by mail. And it purported to subpoena documents from Peggy Jackson as personal representative and personally, not on behalf of the trust. So there wasn't even an attempt to serve it. Subpoena was issued out of the Arizona bankruptcy, or the California bankruptcy court, non-existent court. There were a number of other deficiencies in it. And Mr. Lazo simply misstated the record. The only, I sent him an email immediately with all of the information. And after waiting a long period of time, he sent me an email saying he wanted to talk about my commission of a felony in Arizona, or in California, by unlicensed practice of law in having the marshal hold the funds until we could get in and get admitted. All of it's ridiculous, it's not even a felony if it were anything, it were a misdemeanor. But in any event, your honor, that's where things went south in the sanctions. And I'm frankly embarrassed to have to argue sanctions in almost 55 years. I've never before filed a motion for sanctions. But I believe they're apropos here. Now, as to the Peacock versus Thomas case, I feel like I'm in Never Never Land here. I think that case supports us completely. I wish I had found it and cited it myself. What it says is that if there's a judgment, you can't simply bring somebody else in with a complaint with an entirely new claim for relief. There simply isn't jurisdiction to do that. What we have here is an Arizona bank account, which they forum shopped by coming to California to levy on a national bank so that they paid the money to the marshal's office here in California. And they then proceeded in California not to make the claim that they had an independent claim against the trust, but they claimed that they could execute  There were a number of reasons. There were five reasons listed, none of which did Mr. Lazo address. He hasn't addressed the mootness argument. He hasn't addressed the findings that the property belonged to the trust. He failed to address the many procedural deficiencies under California law in the execution. He failed to address the fact that while there was no evidentiary hearing, the court below essentially granted summary judgment. And he said, Mr. Lazo, or DFG, you have no basis for your claims. None of these were addressed. But the fact is there is no jurisdiction here. There's no jurisdiction to process a lawsuit that has never been filed against the trust. The motion to amend in the Arizona Bankruptcy Court years ago was never pursued, and that action was dismissed with prejudice against dozens of defendants. So the solution DFG wants, apparently, is somehow to order the bank, which no longer has the money, to transfer the money, or somehow to ask the bankruptcy court to hear a complaint against the trust on some fraud theory. None of that has been filed. That's exactly what Peacock says. You can't, in a proceeding on a judgment, raise an entirely new barrage of claims against another person. And that's what they've done here. They've simply levied on a trust on a bank account in Arizona by having it levied upon in California on the bank's office in California, dragged the trust over here when they couldn't make that stick, when the judge properly said trust is governed by Arizona law because it's an Arizona entity. They then shifted the grounds, and for the first time before this court, raised the argument that somehow they have a fraud complaint against the trust. And that simply isn't permitted under Peacock. I'd like to spend some time, if I may, answering questions if the court has any. Certainly, if the court sees. With regard to the Rule 45 sanctions, the district court's analysis was that it was facially invalid because it required the production of documents 3,000 miles away. But as I look at the options available, the boxes available to be checked on the subpoena, the only one that's checked is to command the recipient to produce and permit inspection. And it was served with a portion of Rule 45 that indicates that Jackson didn't have to make a personal appearance. I beg your pardon, Your Honor. It was served with the wrong Rule 45 motion. In other words, the rule says you have to provide a copy of the rule. I'm a little bit upset about this because I spent five or six hours researching the rule that they submitted with their Rule 45 subpoena, and it was the wrong rule. I guess my question, the bottom line, is wasn't it obvious to you that she could have produced the documents by email or make any arrangements instead of appearing in person? When you say she, Your Honor, do you mean Peggy Jackson as trustee? Counsel for Ms. Jackson. No, Peggy Jackson was not served. They sent it to me as representing Peggy Jackson as the trustee. And was it obvious? They wanted to produce documents as personal representative. And no, it was not obvious to me, Your Honor. Upon receiving that subpoena, did you think that Ms. Jackson had to make a personal appearance or you could make arrangements to produce the documents by email? I immediately sent an email in which I pointed out some of the deficiencies. And by the way, the court only said the most important facial deficiency. There were others in the caption of it, improper service, not including a copy of the rule, by in fact worse, including the wrong rule. And nowhere ever did Mr. Lasso say that the documents could be produced electronically. Keep in mind, he wanted documents to which he was not entitled. He wanted documents from the Nailhundin estate. But beyond that, he even sent a threatening letter. This is all in the record, Your Honor. Setting aside the other deficiencies, though, I'm focusing on the documents that you received. You received a copy of a subpoena, albeit from the bankruptcy court. But setting that aside for a moment, you received a subpoena that required the production of documents accompanied by a portion of Rule 45 that says an appearance is not required. I'm not sure that was part of the Rule 45 that was sent to me, Your Honor. But in any event, Mr. Lasso never said that we could do that. And keep in mind, please, Your Honor, that he was demanding documents from Peggy Jackson in connection with her duties as personal representative of the Nailhundin estate, not documents from the trust, which was the only entity before the court if he had issued the subpoena in the right court. And beyond all that, instead of saying, oh, well, just get us the documents we're entitled to by email or electronically, instead he said, no, he's going to file a motion to enforce the subpoena, which I took to mean to enforce her to personally appear and produce documents. All right. Thank you. Is there any questions about the Peacock versus Thomas case? Because, Your Honor, it seems to me this is precisely on point saying they can't do what they're trying to do here, which is levy on a bank account belonging to the trust under a judgment against Daniel Hendon and then use that as authority to create jurisdiction to sue the trust. It's the trust assets. We've got the argument. Judge Cole, do you have any questions? Judge Fischer? No. No questions. Thank you. Thank you very much. Thank you. Briefly, Your Honors. I think we both agree that the Peacock case is on point, but it's important to distinguish the fact that because it's on point, it means the district court had no jurisdiction to make this ruling. When the district court had no jurisdiction from the outset, everything else goes away. That's the first important point. The second thing counsel mentioned was in regard to the subpoena being directed to Peggy Jackson in her personal representative capacity. Again, for the same reasons I cited before, we cannot direct a subpoena to a trust. You direct a subpoena to the trustee of the trust. And that's exactly what we did. Thirdly, I would like to quote from the district court's finding regarding counsel's participation in the meet and confer. Open quote, counsel for Jackson escalated the dispute and seemed intent on filing a motion from the first email they sent. Jackson's initial email to DFG's counsel was accusatory and threatening. Jackson's email demanded immediate withdrawal of the subpoena, but did not request a meet and confer. In violation of local rule 37-1, Jackson's counsel never tried to have a discussion either by phone or in person. It was wholly unreasonable, particularly in the face of those circumstances, to conjecture that the subpoena required a personal appearance. What in the world would have given any reasonable counsel the belief that Peggy Jackson was required to fly to California and drop these documents off? It's absurd. There is one other point, your honors, that I would like to make in regard to, even if that isn't true regarding the personal appearance requirement. One of the exceptions to the 100 mile rule is if the person to whom the subpoena is directed is, quote unquote, employed or regularly transacts business in the state. Here we have Peggy Jackson as the trustee of the WNN Revocable Trust allowing the judgment debtor to make withdrawals in Southern California from a Southern California Bank of America and thus inherently employing her capacity as a trustee to allow those withdrawals to be made. And this occurred over several months that we demonstrated to the district court. That could very well qualify as regularly transacting business in the state, even if that 100 mile rule is in play, which it is not for the aforementioned reasons I stated. Again, we live in a hyper technical society here. Drop box links, anything would work. I cannot recall a case in which someone actually hand-delivered documents or was inconvenienced in any way in response to a subpoena. Sanctions are not warranted for that reason and for the reasons that counsel did not effectively participate and meet and confer. Thank you very much. All right. Thank you very much, both sides, for your argument. The matter is submitted.
judges: Cole, Fisher, Nguyen